IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOMINIC TUFARO, | : | CIVIL ACTION NO. **3:CV-05-0069** |
| Petitioner | : | (Chief Judge Vanaskie) |
| v. | : | (Magistrate Judge Blewitt) |
| RONNIE HOLT, | : | |
| Respondent | : | |

## **REPORT AND RECOMMENDATION**

The Petitioner, an inmate at the Federal Correctional Institution at Schuylkill ("FCI-Schuylkill") filed this Petition for Writ of Habeas Corpus on January 11, 2005, pursuant to 28 U.S.C. § 2241, correctly naming as Respondent the Warden at FCI-Schuylkill. (Doc. 1).[1] Petitioner also filed a support Memorandum with attached Exhibits, which in part show that he exhausted his administrative remedies with the Bureau of Prisons ("BOP"). (Doc. 2). Petitioner further filed his Declaration in support of his habeas petition. (Doc. 3). Respondent submitted his Response and Exhibits in support thereof on March 10, 2005. (Doc. 18). Petitioner then filed a Traverse. (Doc. 21). The Petition is presently ripe for disposition.

---

[1] We note that the proper Respondent is indeed the Warden at FCI-Schuylkill. *See* 28 U.S.C. §§ 2242 and 2243.

**I. Background.**

Initially, we note that there is no dispute that Petitioner exhausted his BOP administrative remedies with respect to the claims presented in his instant Petition, which challenge the BOP's computation of his federal sentence. (Doc. 3, ¶ 4. & Doc. 2, pp. 2-3 & attached Exhibits & Doc. 18, p. 2, n. 1). *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3d Cir. 1996) (It is well-settled that before a prisoner can bring a habeas petition under 28 U.S.C. § 2241, administrative remedies must be exhausted).[2] Since, in his Petition, Petitioner is challenging the BOP's computation of his sentence and is not seeking modification of his sentence imposed by the District Court, as Petitioner recognizes (Doc. 2, p. 2), he can proceed in a §2241 habeas petition as opposed to a 28 U.S.C. §2255 motion to modify sentence. (Doc. 1, p. 6). *See Chambers v. Holland*, 920 F. Supp. 618, 620 (M.D. Pa. 1996), *aff'd.* 100 F. 3d 946 (3d Cir. 1996) (Table). Respondent does not dispute this.

Respondent's record establishes the undisputed factual history of this case. (Doc. 18 & attached Exhibits in support of Respondent's Response).[3] In January, 1975, Petitioner was charged in the Southern District of New York with various drug offenses in violation of 21 U.S.C. § 812 and § 841 in case # 75 CR-687-06. On December 9, 1982, Petitioner was arrested and charged in a second indictment in the Southern District of New York with another drug offense in case

---

[2] We note that the documents attached to the Petitioner's Memorandum as Exhibits demonstrate that Petitioner fully exhausted his administrative remedies regarding his improper calculation of sentence claim. (Doc. 2, Exhibits).

[3] We note that Petitioner's Memorandum is support of his Habeas Petition also contains the factual history of his case. (Doc. 2, pp. 4-5).

# 82 CR-838-01. Petitioner states that in the second indictment, he was charged with conspiracy to distribute and possess heroin in violation of 21 U.S.C. § 848. He was confined at the Metropolitan Correctional Center, New York ("MCC") on December 9, 1982. Petitioner remained at MCC, except being released for court appearances, until May 8, 1984, when he was transferred to USP-Lewisburg. (Doc. 18, Exhibit 1, ¶ 6. and Exhibit 2, p. 3).

On July 7, 1983, Petitioner was sentenced in the Southern District of New York to fifteen years imprisonment on the § 812 and § 841 drug charges, case # 75 CR-68706. (*Id.*, ¶ 6.). According to Respondent, Petitioner was committed to the custody of the Attorney General at this time for service of his first federal sentence. (*Id.*, Ex. 1, ¶ 6.). Subsequently, on May 1, 1984, Petitioner was sentenced to forty years imprisonment in case # 82 CR-838-01. The District Court ordered that Petitioner's 40-year sentence was to run concurrently with his previous 15-year sentence. (*Id.*, ¶ 6.-7. & Doc. 3, pp. 4-5 & Ex. F).

On May 8, 1984, as stated, Petitioner was transferred to USP-Lewisburg for service of his federal sentences. Petitioner has been in continuous federal custody from May 8, 1984, to the present. (*Id.*, ¶'s 6.-7. & Doc. 2, Ex. G).[4]

Petitioner claims that the BOP has not given him 305 days jail time credit for the period of time between the imposition of his 15-year and 40-year sentences and the date that he was committed to the BOP to commence service of these sentences, *i.e.* from July 7, 1983, through

---

[4]Petitioner was also given a third federal sentence of 5 years, consecutive to his other sentences, in case #84 CR-121-01, but the computation of time for this sentence is not at issue herein. Doc. 2, p. 3, n. 1, and Doc. 18, Ex. 2, pp. 4-5.

May 1, 1984. (Doc. 2, p. 7).  Petitioner contends that "[a]ll the time he spent in custody up to May 8, 1984 should be credited as jail time to both sentences combined." (Doc. 2, pp. 3-4).  Petitioner claims that the BOP's incorrect computation of his sentence is making him serve an additional 305 days of imprisonment.  Petitioner claims that under the old law, 18 U.S.C. § 3568 (repealed), he is entitled to jail time credit for all of the time he spent in federal custody up to May 8, 1984, when the U.S. Marshal relinquished custody of him and he was committed to the BOP for service of his stated two federal sentences, which he states is equal to 305 days.  (Doc. 2, p. 4).[5]

The parties do not dispute that § 3568 (repealed), which pre-dates the U.S. Sentencing Guidelines, applies to the computation of Petitioner's two federal sentences at issue in this case. (Doc. 2, p. 5 & Doc. 18, p. 3).  Respondent states that pursuant to § 3568, Petitioner commenced serving his federal sentence on July 7, 1983, when his first federal 15-year sentence was imposed in case # 75 CR-687-06.  Respondent states that Petitioner was given pre-sentence jail credit for 210 days towards his federal sentence for the time he served from the December 9, 1982, arrest date related to the federal drug charges, through July 6, 1983, the day prior to the imposition of Petitioner's 15-year federal sentence in case # 75 CR-687-06.  (Doc. 18 at Ex. 1 ¶ 8. & at Ex. 2, p.

---

[5]As discussed below, the Respondent's evidence reveals that the BOP awarded Petitioner with pre-sentence time credit from December 9, 1982, through July 6, 1983.  Once Petitioner's 15-year (first) sentence was imposed, Petitioner received credit only on this sentence for the period of July 7, 1983, through April 30, 1984. (Doc. 18, Ex. 1, ¶'s 8. and 10.). After Petitioner's 40-year (second) sentence was imposed, the BOP combined Petitioner's sentences into one aggregate sentence of 40 years, 9 months and 24 days.  Petitioner disputes the 9 months and 24 days that the BOP included in his aggregate sentence.

6).[6]  Petitioner argues that his sentences did not commence to run under § 3568 until May 8, 1984, the date that he was actually committed to USP-Lewisburg.

## II. Discussion.

### A. *Computation of Petitioner's Sentence by the BOP.*

Petitioner's federal sentence computation began on July 7, 1983, the date that his 15-year federal sentence in case # 75 CR-687-06 was imposed. (Doc. 18, Ex. 1, ¶ 8.). While serving his federal sentences, Petitioner has been awarded a total of 210 days pre-sentence jail credit. Petitioner is projected to earn an additional 5498 days of good conduct time, and he has a projected release date *via* good conduct time of July 13, 2009. (Doc. 18, Ex. 2, p. 6). Petitioner seeks an additional 305 days of pre-sentence jail time credit.

Petitioner was given pre-sentence jail credit from December 9, 1982, the day of his arrest on federal drug charges, through July 6, 1983, the day before imposition of his 15-year (first) federal sentence. The Petitioner was then given jail credit from July 7, 1983, through April 30, 1984, solely

---

[6]Respondent and BOP Inmate Systems Manager McIntyre state that Petitioner was given a total pre-sentence jail credit for 210 days. (Doc. 18, p. 3, & Exhibit 1, ¶ 8.). However, the Petitioner states that both his federal sentences began to run on May 8, 1984, when he was transferred from the U.S. Marshal to USP-Lewisburg, and not on July 7, 1983, and that he should have been given jail time credit for all of the time he spent in MCC custody from the date of his arrest, commencing December 9, 1982, through the date he was transferred to USP-Lewisburg, May 8, 1984, towards the service of his federal sentences, and not just through July 6, 1983. Petitioner claims that all of the time he spent at MCC in cusotdy up to the time of his transfer to USP-Lewisburg, should be credited as pre-sentence jail time. Petitioner disputes Respondent's contention that he began serving his federal sentence on July 7, 1983, the date that his 15-year sentence was imposed, and claims that he "had not begun serving the first sentence while waiting in custody at MCC." (Doc. 2, p. 4). Thus, Petitioner claims that he did not begin serving his federal sentences until his transfer to USP-Lewisburg.
   The record reflects that Petitioner was given a total pre-sentence jail time credit of 210 days, from December 9, 1982, through July 6, 1983. (Doc. 18, Ex. 1, ¶ 8., and Ex. 2, p. 6).

towards his first sentence. After his second sentence, Petitioner was given jail credit towards both of his sentences from May 1, 1984, onward. (Doc. 18, Ex. 1, ¶ 10.). Thereafter, on May 8, 1984, Petitioner was committed to USP-Lewisburg for service of his aggregate federal sentence.

On May 1, 1984, the date of imposition of Petitioner's second federal sentence of 40 years to run concurrent with Petitioner's first federal sentence of 15 years, the BOP combined both of Petitioner's federal sentences into one aggregate sentence of 40 years, 9 months and 24 days, and from that date forward, Petitioner received credit on both of his sentences. (Doc. 18, Ex. 1, ¶ 10.).[7]

Petitioner now seeks additional prior jail time credit from July 7, 1983, through May 7, 1984, for all of the time he spent at MCC. Respondent states that Petitioner is not entitled to this additional pre-sentence jail credit and that he is only entitled to pre-sentence jail credit for the time he was in custody prior to the imposition of his first 15-year sentence. We agree with Respondent.

The crux of Petitioner's Habeas Petition is that he claims that the BOP must give him prior jail credit for all of the time that it took physical custody of him from December 9, 1982, and not just up to the date of his first 15-year federal sentence. (Doc. 2, at p. 4). The Respondent correctly states that Petitioner's first federal sentence was calculated to commence on July 7, 1983, the date that it was imposed. Petitioner was given a pre-sentence jail credit of 210 days while he was in custody at MCC, and Respondent asserts that he is not entitled to an additional pre-sentence credit for the time of July 7, 1983, through April 30, 1984, since this time was already credited towards

---

[7]As Respondent's exhibit shows, Petitioner's aggregate sentence was increased to 45 years when he received his consecutive 5-year sentence in case # 84 CR-121-01. (Doc. 18, Ex. 1, ¶ 10.). As mentioned, this latter 5-year sentence is not at issue in this case.

service of his first 15-year federal sentence. (Doc. 18, p. 3).

Respondent has demonstrated that Petitioner was given jail credit (not pre-sentence jail credit) for all of the time he spent in custody at MCC after imposition of his first federal sentence on July 7, 1983, through April 30, 1984, the day before imposition of his 40-year concurrent second federal sentence, towards service of his 15-year first federal sentence. Thus, we agree with Respondent that if Petitioner is given another jail credit for July 7, 1983, through May 7, 1984, as he is seeking, he will be given double credit for this time.

Petitioner contends that the BOP has improperly computed his sentences as beginning on July 7, 1983, and that his federal sentences should have been construed as commencing to run on May 8, 1984, the date he was "committed" to the BOP and transferred to federal prison for service of his sentences. (Doc. 2, p. 6). Respondent contends that the Petitioner's federal sentences were correctly computed since he had already received pre-sentence jail credit from December 9, 1982, through July 6, 1983, and that from July 7, 1983, through April 30, 1984, Petitioner received credit towards his 15-year federal sentence. (Doc. 18, Ex. 1, p. 3-4). Thus, Respondent states that Petitioner is only entitled to jail credit on both of his sentences commencing May 1, 1984.

Petitioner contends that the BOP is improperly computing his 40-year aggregate federal sentence to commence on July 7, 1983, the date that he was sentenced in his first federal case, and not on May 8, 1984, the date Petitioner states that he was committed to the BOP to begin service of his federal sentences. Petitioner states that if his federal sentences are construed as commencing on May 8, 1984, he should be given an additional pre-sentence jail time credit of 305 days towards his federal sentences, which is for all of the time he was incarcerated at MCC (*i.e.*, July 7, 1983,

through May 7, 1984). The issue that arises is when does a federal sentence commence to run under §3568.

Respondent, as stated, argues that Petitioner has already been given pre-sentence jail credit for the time period from December 8, 1982, through July 6, 1983. Petitioner does not dispute this. The Petitioner was then given credit from July 7, 1983, the date that his 15-year sentence was imposed, through April 30, 1984, the day before his second sentence of 40 years was imposed, only towards his 15-year sentence. Once Petitioner's second sentence of 40 years was imposed on May 1, 1984, and his sentences were combined into one aggregate sentence, and Petitioner then began to receive credit on both of his sentences. Thus, Petitioner did receive credit towards his 15-year federal sentence for the period commencing July 7, 1983, the day of imposition of Petitioner's 15-year federal sentence, through April 30, 1984, and he received credit towards his aggregate sentence from May 1, 1984, to the present.

We find that the Petitioner's sentence was calculated by the BOP in accordance with federal statutes and regulations applicable at the time of his sentences. We find that Petitioner's hypertechnical reading of § 3568 is incorrect.

As both parties indicate, §3568 (repealed) provided in relevant part as follows:

> "The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence."

> "If any such person shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention."

(Doc. 2, p. 5 & Doc. 18, Ex. 2, p. 8).

Respondent argues that Petitioner began serving his first 15-year sentence on July 7, 1983, when it was imposed, notwithstanding the fact that he did not yet arrive at USP-Lewisburg. Respondent states that prior to this sentence, while Petitioner was confined at MCC, a federal detention center, Petitioner was given pre-sentence jail time credit from December 9, 1982, through July 6, 1983. (Doc. 18, p. 5). According to Respondent, Petitioner then was given credit from July 7, 1983, through April 30, 1984, towards his first sentence of 15 years, and that his second sentence of 40 years did not commence to run until it was imposed on May 1, 1984. Since the Court imposed a concurrent sentence on May 1, 1984, with respect to Petitioner's first and second sentences, the BOP relied upon §3568 and BOP policy to calculate Petitioner's aggregate sentence.

Respondent's evidence indicates that BOP P.S. 5880.30, Chapter VII, p. 29, § 9(b) provided as follows:

> b.      Aggregated concurrent sentence: A concurrent sentence or violator term that is running along with another sentence or violator term, and that has an EFT date which is longer, are combined to form a single sentence. Presentence time credit applicable to each shall be totaled and subtracted from the EFT date and PE date that result from the aggregation. Inoperative time that occurs **before** a concurrent sentence or violator term begins to run, will have no affect on the EFT date or PE date of the concurrent sentence or EFT of the violator term.
>
> The total length of the aggregate will be determined by adding the length of the first sentence or violator term to the overlap of the concurrent sentence or violator term. The overlap is determined by finding the difference (exact number of days) between the EFT date (unaffected by presentence time credit) of the concurrent sentence or violator term and the EFT date of the concurrent sentence or

>       violator term. The overlap is then added to the length of the first
>       sentence or violator term for a total sentence for the aggregate.

(Doc. 18, Ex. 2, pp. 8-9).[8]

The Court *Doyle v. U.S. DOJ*, 1995 WL 412406 * 5 (E.D. Pa.), further stated that "[t]he Attorney General shall give any such person credit toward the service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed." *See also Reno v. Koray*, 515 U.S. 50, 59 (1995).

The Court in *Doyle, supra.* at *5, stated that for offenses committed before November 1, 1987, the federal sentencing computation procedures set forth in § 3568 (repealed) determines when an inmate's federal sentence commenced and to what extent an inmate should have received federal credit for any pre-sentence custody.

We agree with Respondent that Petitioner received all of the jail credit to which he was entitled under §3568 for all of the time he spent at MCC before his first federal sentence was imposed and before he commenced service of that sentence. Once Petitioner's first federal sentence was imposed, the BOP correctly credited Petitioner's jail time, despite his being at MCC, solely towards his 15-year sentence. Further, once Petitioner's second concurrent sentence was imposed, the BOP then began to credit Petitioner's jail time towards his aggregate sentence.

Petitioner argues that he was not received at a USP for service of his 15-year sentence on July 7, 1983, and thus this sentence did not begin to run on this date. Rather, Petitioner states that

---

[8]Petitioner and Respondent agree upon the applicable language of §3568. (Doc. 1, Ex. A-2, Ex. B-4 & Doc. 2, p. 5 & Doc. 18, p. 5).

his first and second federal sentences did not begin to run until May 8, 1984, when he was transferred to USP-Lewisburg. The Petitioner does not cite to any case law which supports his position that his federal sentences did not begin to run until he was transferred to USP-Lewisburg as opposed to the date that the sentences were imposed. Petitioner relies upon the BOP Sentence Monitoring Computation Data Sheet, which states that his date committed was May 8, 1984. (Doc. 2, Ex. B-6.). Petitioner claims that he is entitled to additional pre-sentence jail credit of 9 months and 24 days from July 7, 1983, through May 8, 1984, when he was committed to the BOP for service of his sentences. Petitioner claims that his aggregate sentence for all three of his federal sentences should be 45 years, and not 45 years, 9 months and 24 days as the BOP has computed it to be. However, as discussed above, we find that Petitioner has been afforded all of the credit to which he was entitled under § 3568, including both pre-sentence jail credit and jail credit after his sentences were imposed.

The *Doyle* Court stated that "[i]t is well settled that a federal sentence does not commence until the Attorney General of the United States receives the Defendant into custody for service of his sentence." *Doyle, supra* at * 5. Respondent's evidence indicates that Petitioner was committed to the custody of the Attorney General on the date that his 15-year sentence in case # 75 CR-687 was imposed, *i.e.*, July 7, 1983, even though he had not yet been transferred to USP-Lewisburg. Respondent then states that the BOP gave Petitioner credit solely towards his July 7, 1983, sentence from July 7, 1983, through April 30, 1984, the day before his 40-year sentence was imposed. (Doc. 18, Ex. 1, pp. 3-4). Then from May 1, 1984, onward, the terms of Petitioner's first and second sentences were combined into one sentence, and the BOP calculated his aggregate sentence as 40

years, nine months and 24 days. The Petitioner's aggregate sentence was then increased to 45 years, 9 months and 24 days after his third 5-year consecutive sentence was imposed. (*Id*., p. 4, ¶ 10.). We agree with Respondent that Petitioner's aggregate sentence was correctly computed. Petitioner was already given credit for the time period at issue, namely, July 7, 1983, through May 8, 1984. As the *Doyle* Court noted, § 3568 had implicitly stated that double crediting is prohibited. *Dolye, supra* at *7 n. 16.

In his Traverse (Doc. 21, pp. 1-2), Petitioner argues that he was not committed to the custody of the Attorney General on July 7, 1983, when his first sentence was imposed, contrary to Respondent's contention. Rather, he states that, according to his Exhibit B-6, Doc. 2 (BOP Sentence Monitoring Computation Data sheet), the date he was committed to the BOP was "05-08-1984."[9] While May 8, 1984, is indeed the date that Petitioner was transferred to USP-Lewisburg from MCC, we agree with Respondent that Petitioner began serving his first federal sentence on July 7, 1983, the date it was imposed, and not on May 8, 1984, the date of Petitioner's incarceration at USP-Lewisburg. We further find, based on the above discussion, that Petitioner is not entitled to be given additional pre-sentence jail credit from July 7, 1983, through May 1, 1984, as he is seeking.

Based on the above, we find that Petitioner's sentence has been correctly computed by the BOP.

---

[9] *See also* Respondent's Ex. 2, p. 3, Doc. 18.

**III. Recommendation**.

Based on the foregoing, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied.

                                       **s/ Thomas M. Blewitt**
                                       **THOMAS M. BLEWITT**
                                       **United States Magistrate Judge**

**Dated: July 19, 2005**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOMINIC TUFARO, | : | CIVIL ACTION NO. **3:CV-05-0069** |
| Petitioner | : | (Chief Judge Vanaskie) |
| v. | : | (Magistrate Judge Blewitt) |
| RONNIE HOLT, | : | |
| Respondent | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **July 19, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                    s/ Thomas M. Blewitt
                                                   **THOMAS M. BLEWITT**
                                                   **United States Magistrate Judge**

**Dated: July 19, 2005**