IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOMINIC TUFARO, | : |
| Plaintiff | : CHIEF JUDGE VANASKIE |
| v. | : 3:05-CV-69 |
| WARDEN RONNIE HOLT, | : |
| Respondent | : |

### MEMORANDUM AND ORDER

The issue before the Court in this 28 U.S.C. § 2241 proceeding, presented on the pro se petitioner's objections to a Report and Recommendation of Magistrate Judge Thomas M. Blewitt, is whether the Bureau of Prisons ("BOP") erred in refusing to credit against petitioner's federal court 40-year prison term the time that he spent in custody between the date that he was sentenced by a federal court to a 15-year prison term and the date that the concurrent 40-year sentence was levied. Having considered the matter de novo, I find that petitioner Dominic Tufaro is not entitled to relief.

I.   BACKGROUND

On December 9, 1982, Tufaro was arrested and placed in custody at the federal Metropolitan Correctional Center ("MCC") in New York City. At that time, he was subject to two pending indictments in the Southern District of New York, one under docket number 75-CR-

0687-06, and the other under docket number S82-CR-0838-01.

On July 7, 1983, Tufaro was sentenced in the Southern District of New York to a prison term of 15 years on the charges brought under docket number 75-CR-0687-06. Tufaro was returned to the MCC, where he remained in custody pending the disposition of the charges set forth in the 1982 indictment.

On May 1, 1984, Tufaro was sentenced to a prison term of 40 years on the 1982 indictment. The district court directed that the 40-year sentence run concurrent with the prior 15-year prison term.

On May 8, 1984, 305 days after the first sentence was imposed, Tufaro was transferred to the United States Penitentiary at Lewisburg for service of his federal sentences. The BOP, exercising its authority to determine the date when an inmate's prison term will expire, granted Tufaro jail time credit for the time served from December 9, 1982 (the date of his arrest), to July 6, 1983 (the date before his first sentence was imposed). The 297-day period from July 7, 1983 through April 30, 1984, however, was credited solely against the 15-year term imposed on July 7, 1983.

In accordance with BOP Program Statement 5880.30, Tufaro's 40-year and 15-year concurrent sentences were combined into one sentence. The aggregated sentences were made effective May 1, 1984, the date the 40-year sentence was imposed. As a result of the fact that the 297 day period between sentencings was credited against the 15-year sentence,

2

the BOP determined that, as of May 1, 1984, Tufaro had an aggregate term of 40 years, 9 months and 24 days. That is, the aggregate sentence was determined to be the sum of the 40-year sentence plus the 297 days he had served on the 15-year term before the 40-year was imposed.

Tufaro commenced this habeas corpus proceeding on January 11, 2005, contending that the BOP should have credited all time spent in custody up to May 8, 1984 against the combined sentences. Essentially, Tufaro argues that the 40-year term should be credited with all time spent in custody from the date of his arrest in 1982 until the date he was transferred to the United States Penitentiary at Lewisburg, Pennsylvania ("USP-Lewisburg"). Under the approach advocated by Tufaro, his sentence should have commenced to run on May 8, 2004, with jail time credit accruing from the date of his arrest. Effectively, therefore, the 297-day period from the date of the first sentencing until the second sentencing is at issue in this case.[1]

## II.   DISCUSSION

Resolution of Tufaro's claim requires consideration of the statutory provision governing sentence calculation and credit in effect at the time he was sentenced in 1983 and 1984, 18 U.S.C. § 3568 (repealed 1984). This statutory provision, in pertinent part, stated:

---

[1] The parties have stated that the time at issue is 305 days, i.e., the period from July 7, 1983 until May 8, 2004, when petitioner was received at USP-Lewisburg. Because his sentence was calculated as beginning on May 1, 2004, however, the period from May 1 to May 8 does not appear to be in issue. In any event, the uncertainty as to the precise number of days in question in this controversy is not material to its determination.

> The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed. . . .
>
> If any such person shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention.

18 U.S.C.A. § 3568 (West 1985), repealed by Comprehensive Crime Control Act of 1984, ch. 58, § 212(a)(2), 98 Stat.1987.

Tufaro's argument is premised upon the first sentence of this statutory provision – "[t]he sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence." Pointing out that he was not delivered to USP-Lewisburg for service of his sentences until May 8, 1984, Tufaro contends that all time spent in custody prior thereto must be credited against the 40-year sentence.

Tufaro's argument, however, ignores the remainder of § 3568. First, the statute is unambiguous in declaring that credit is to be given only for time spent in custody in connection with the offense for which the sentence was imposed. Once the first sentence was imposed in this case, petitioner was no longer in pre-sentence custody, and the time spent in custody after the first sentencing cannot be said to be attributable to the offense for which the second

4

sentence was imposed. This result is called for by the plain language of the statute. Regardless of the pendency of the 1982 indictment, petitioner would have remained confined to serve the 15-year sentence, so that beginning on July 7, 1983 until the concurrent sentence was imposed, he was confined because of the conviction and not because of the other pending charges.

The second paragraph of section 3568, which provides that "[i]f any such person shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention," also militates against the position postulated by Tufaro. In this case, after the 15-year sentence was imposed on July 7, 1983, Tufaro was essentially held at the MCC awaiting transportation to the place at which this sentence was to be served. Thus, for purposes of sentence computation, Tufaro began serving the 15-year sentence on July 7, 1983. The time spent in custody until the second sentence was imposed was thus properly credited only against the 15-year sentence.

In short, when read in its entirety, section 3568 required that the time held in custody after the first sentence was handed down had to be credited against that sentence until the second sentencing. To hold otherwise would disregard the plain import of the language used by Congress in directing what pre-sentence time is to be credited against a sentence and when a sentence is to commence.

5

This result is also consistent with the settled principle that "a federal sentence made concurrent with a sentence already being served does not operate in a 'fully concurrent' manner. Rather, the second sentence runs together with *the remainder* of the one then being served." Shelvy v. Whitfield, 718 F.2d 441, 444 (D.C. Cir. 1983) (emphasis in original). Tufaro's 40-year term could not commence until it was imposed, and thus ran concurrently with only the time remaining on the 15-year sentence. This result is accomplished by adding the time creditable against only the first sentence to the second prison term.

Courts confronting arguments similar to that advanced by Tufaro here have uniformly sustained the BOP treatment of concurrent sentences under section 3568. For example, in Wilson v. Henderson, 468 F. 2d 582 (5th Cir. 1972), the defendant received his first federal sentence in the United States District Court for the District of Columbia on March 29, 1963. He was thereafter transferred to the Southern District of New York, where he was sentenced to a prison term of 15 years on February 18, 1964. This sentence was directed to run concurrently with the 10 to 12 year sentence imposed by the District of Columbia District Court. The petitioner, like Tufaro in this case, argued that he was entitled to have credited against the second sentence the time held in custody after the first federal sentence was imposed. This argument was rejected because "[a] sentence cannot commence prior to the date it is pronounced even if it is to be concurrent to a sentence already being served." Id. at 584.

The Fifth Circuit ruling in Wilson was applied by the Court of Appeals for the District of

6

Columbia in Shelvy, 718 F.2d at 444 n.5. In Shelvy, the first sentence was imposed on May 15, 1970, and called for imprisonment of 6 to 18 years. The second sentence was imposed approximately 6 months later on November 20, 1970, and required a prison term of 15 years to life. The second sentence was ordered to run concurrent with any sentence then being served. The petitioner, as Tufaro does in this case, argued that he should receive credit against the second sentence for the period from May 15, 1970 until November 20, 1970. In other words, as in this case, the petitioner urged that the court "hold both sentencing dates irrelevant, and direct that he receive credit against the longer sentence . . . for every day he has been incarcerated since his arrest. . . ." Id. at 443. The court rejected this argument, explaining:

> Once a sentence is imposed and becomes operative for the period of time at issue, it is artificial to maintain that custody nonetheless retains its preconviction character, that it remains conditional, unsettled, still dependent upon (and therefore 'in connection with') a trial court's eventual disposition of other charges not yet adjudicated.

Id. at 444. In other words, once a defendant has been sentenced, presentence credit ceases, and "other pending charges do not extend the prisoner's eligibility for credit for time spent in custody prior to the imposition of a sentence [on the other pending charges]." Id. at 442.

The Court of Appeals for the Seventh Circuit also rejected a claim similar to that presented here. See Sinito v. Kindt, 954 F.2d 467, 470 (7th Cir. 1992). The court reasoned that once a defendant has been sentenced, his incarceration is attributable to the existing federal sentence, "not because of an anticipated conviction and sentence." Id.; accord United

7

States v. Barnes, No. 83 CR. 0007, 1990 WL 33800, at *1 (S.D. N.Y. March 21, 1990).

The approach endorsed by the case law is reflected in BOP Program Statement 5880.30.[2] In pertinent part, the Program Statement provides:

> Aggregated concurrent sentence: A concurrent sentence . . . that is running along with another sentence . . . , and that has an EFT date which is longer, are combined to form a single sentence. Presentence time credit applicable to each shall be totaled and subtracted from the EFT date . . . that result[s] from the aggregation. Inoperative time that occurs before a concurrent sentence . . . begins to run, will have no affect on the EFT date. . . .

In this case, the inoperative time is the 297 day period that transpired between the first and second sentences. As noted above, this approach is consistent with the case law. Moreover, the BOP Program Statement implementing § 3568 is entitled to "some deference." See Reno v. Koray, 515 U.S. 50, 60-61 (1995).

It is thus evident that § 3568 does not entitle Tufaro to have credited against the 40-year sentence the time he spent in custody at the MCC between the imposition of the first and second sentences. **ACCORDINGLY, this 15th Day of March, 2006, IT IS HEREBY ORDERED THAT:**

1. The Report and Recommendation of Magistrate Judge Blewitt (Dkt. Entry 23) is **ADOPTED.**

---

[2] A copy of the Program Statement is appended as Exhibit "B" to the Declaration of John E. Wallace submitted as part of the reply to the habeas petition in this matter.

2. The petition for a writ of habeas corpus is **DENIED**.

3. The Clerk of Court is directed to mark this matter **CLOSED**.

                                            **s/ Thomas I. Vanaskie**
                                            Thomas I. Vanaskie, Chief Judge
                                            Middle District of Pennsylvania